IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CHARLIE F. GRUBB, III, in his           )
capacity as Executor of the             )
Estate of Danielle J. Grubb,            )
                                        )
            Plaintiff,                  )
                                        )
       v.                               )      1:12CV174
                                        )
CAROLYN W. COLVIN,                      )
Commissioner of Social                  )
Security,                               )
                                        )
            Defendant.                  )

## MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

Danielle J. Grubb brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits under Title II of the Act.[1] (Doc. 1.) The parties have filed cross-motions for judgment (Docs. 7, 9), and the administrative record has been certified to the court for review. For the reasons set forth below, the Commissioner's motion will be

---

[1] On March 18, 2014, Grubb's counsel moved to substitute the executor of Grubb's estate as a plaintiff following Grubb's death on December 20, 2013. (Docs. 11, 11-1.) On April 20, 2014, the United States Magistrate Judge granted the motion. Thus, the executor is now the plaintiff in this case, but the court will refer to the plaintiff as "Grubb" for simplicity's sake.

granted, Grubb's motion will be denied, and this action will be dismissed.

**I. BACKGROUND**

Grubb filed her application for Disability Insurance Benefits ("DIB") on March 1, 2007, alleging a disability onset date of September 16, 2005. (See Tr. at 132.)[2] Her application was denied initially (id. 83) and upon reconsideration (id. at 87). Thereafter, Grubb requested a hearing *de novo* before an Administrative Law Judge ("ALJ"). (Id. at 95.) Grubb, along with her attorney and a vocational expert ("VE"), attended the subsequent hearing on April 2, 2009. (Id. at 36.) The ALJ ultimately determined that Grubb was not disabled within the meaning of the Act (id. at 31) and, on March 17, 2011, the Appeals Council denied Grubb's request for review of the decision, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (id. at 11-15).

In rendering his disability determination, the ALJ made the following findings later adopted by the Commissioner:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 16, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

---

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Doc. 5.)

3. The claimant has the following severe impairments: asthma; obesity; tachycardia; and insulin dependent diabetes (20 CFR 404.1520(c)).

. . . .

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

. . . .

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can lift or carry 20 pounds occasionally and 10 pounds frequently; she [can] stand or walk for 6 hours in an 8 hour day; she may never climb ropes, ladders, or scaffolds; she may occasionally climb ramps or stairs, stoop, bend, kneel, crouch, or crawl; she should not work in environments with temperature extremes; extreme damp or dryness; or gases, fumes, dusts, smoke, chemicals or other pulmonary irritants; and she should not work at a forced pace or assembly line pace job.

. . . .

6. The claimant is capable of performing past relevant work as a customer service representative and customer service representative in the financial industry. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565 and 416.965).

(Id. at 24-26, 30.)

Because she was capable of performing past relevant work, the ALJ determined that Grubb was not disabled within the meaning of the Act. (Id. at 31.)

## II. ANALYSIS

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case *de novo*." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (citations omitted) (internal brackets omitted) (setting out the standards for judicial review). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "[I]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir.

1966)). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (quoting Laws, 368 F.2d at 642) (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)) (internal brackets omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner or the ALJ]." Hancock, 667 F.3d at 472 (quoting Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005)). The issue before this court, therefore, "is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig, 76 F.3d at 589.

In undertaking this limited review, the court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial

5

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[3]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)).

> Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy.

Id. The claimant bears the burden as to the first four steps, but the Commissioner bears the burden as to the fifth step. Id. at 472-73.

In undertaking this sequential evaluation process, the five steps are considered in turn, although a finding adverse to the claimant at either of the first two steps forecloses a disability designation and ends the inquiry. In this regard,

---

[3] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

"[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

If a claimant carries her burden at each of the first two steps and also meets her burden at step three of establishing an impairment that meets or equals an impairment listed in the regulations, the claimant is disabled, and there is no need to proceed to step four or five. See Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then the analysis continues and the ALJ must assess the claimant's residual functional capacity ("RFC"). Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

7

RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work based on that RFC, the analysis proceeds to the fifth step, which shifts the burden of proof and "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry her "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

In the present case, the ALJ found that Grubb had not engaged in "substantial gainful activity" since her alleged onset date. (Tr. at 24.) She therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Grubb suffered from the following severe impairments: asthma, obesity, tachycardia, and insulin-dependent diabetes. (Id. at 25.) The ALJ found at step three that these impairments did not meet or medically equal a disability

8

listing. (Id. at 26.) Accordingly, he assessed Grubb's RFC and determined that she could perform light work with some further limitations. (Id.) At step four, the ALJ found Grubb was not precluded by her RFC from performing past relevant work as a customer service representative. (Id. at 30.) Thus, the ALJ concluded that Grubb was not disabled under the Act. (Id. at 31.)

Grubb first contends the ALJ erred by failing to give controlling weight to the opinion of treating pulmonologist Dr. Herbon E. Fleming. (Doc. 8 at 3-4.) However, a treating physician's opinion is only entitled to controlling weight if it is not contradicted by substantial evidence. See Mastro, 270 F.3d at 178. Here, the ALJ relied on substantial objective and subjective evidence that weighed against the opinion of Dr. Fleming. The ALJ relied upon clinical tests showing symptoms inconsistent with disabling functional limitations (see Tr. at 209, 217, 245, 340, 393, 430), Grubb's physical exam in November 2008 (id. at 342-43), and other examinations (id. at 314, 319, 349-51). He also relied on treating pulmonologist Dr. Michael J. DiMeo's notes stating that a nurse observed Grubb walking through the parking lot after a doctor's visit without coughing, which Dr. DiMeo thought "raises the issue of whether or not we are dealing with psychogenic coughing either from anxiety of coming to the physician or other causes." (Id. at 248.) The

record contains substantial evidence in support of the ALJ's conclusion, and thus the court will not disturb the ruling on this ground.

Grubb also contends that the ALJ should have re-contacted Dr. Fleming and that the Appeals Council should have considered Dr. Fleming's new evidence submitted in 2009 (id. at 675) also fail. (Doc. 8 at 3-5.) She provides no authority for the proposition that the ALJ had an obligation to re-contact Dr. Fleming, and he plainly had no such obligation. "[I]t is not the rejection of the treating physician's opinion that triggers the duty to recontact the physician; rather it is the inadequacy of the evidence the ALJ receive[s] from [the claimant's] treating physician that triggers the duty." Elder v. Astrue, Civ. A. No. 3:09-02365-JRM, 2010 WL 3980105, at *5 (D.S.C. Oct. 8, 2010) (quoting White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2001)) (internal quotation marks omitted). In his decision, the ALJ gave little weight to Dr. Fleming's certification to the agency administering student loan waivers that Grubb was disabled because it was provided solely for the purpose of helping Grubb discharge her student loans and failed to give any medical support or analysis. (Tr. at 30.) As in Elder, the ALJ was not confused about the physician's opinion, but rather found it to be contrary to the record evidence. Cf.

Elder, 2010 WL 3980105, at *5. Thus, the ALJ's failure to re-contact Dr. Fleming provides no basis for reversal.

As to the "new" evidence claim, Grubb points to an October 14, 2009 note by Dr. Fleming, apparently in response to the ALJ's decision, that the doctor's recommendation of disability "was not for monetary basis, as suggested by the judge," and that "[i]n [his] medical opinion, this patient is totally disabled." (Tr. at 675.) The quoted portion is duplicative of Dr. Fleming's earlier opinion and merely attempts to explain away the ALJ's conclusion that the purpose of Dr. Fleming's prior opinion was to discharge Grubb's student loan debt. The Appeals Council found that the evidence provided no basis for reversal. (Id. at 11-12.) Remand may be necessary only if the evidence submitted to the Appeals Council is both new and material. See Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011); 20 C.F.R. § 404.970(b). "Evidence is new 'if it is not duplicative or cumulative' and is material if there is 'a reasonable possibility that the new evidence would have changed the outcome.'" Id. at 705 (quoting Wilkins v. Sec'y, Dep't of Health and Human Servs., 953 F.2d 93, 96 (4th Cir. 1991) (en banc)). Because the evidence was duplicative, the Appeals Council was not required to consider it.

Finally, Grubb argues the ALJ impermissibly discounted her credibility. (Doc. 8 at 7-8.) It is true, as Grubb notes, that

11

the ALJ may not base his credibility judgment on irrational criteria. Breeden v. Weinberger, 493 F.2d 1002, 1010 (4th Cir. 1974). In this case, however, substantial evidence – as discussed above - supported the ALJ's credibility judgment. Grubb fails to mention in her brief the substantial clinical testing that supported the ALJ's determination that her subjective complaints were not credible to the extent they conflicted with the RFC calculation. (See Tr. at 28-30 (noting the spirometry results and chest x-rays which found Grubb's lung clear "for the most part," her breathing unobstructed, and no coronary artery disease; and her doctors' opinions that her tachycardia is related to her asthma medications, with which she over-medicates).) The same evidence that justified rejecting Dr. Fleming's opinion supports the ALJ's decision to only partially credit Grubb's testimony. Thus, the ALJ did not err.

## III. CONCLUSION

For the reasons stated, the court finds that the factual findings of the ALJ, which were adopted by the Commissioner, are supported by substantial evidence and were reached through application of the correct legal standard.

IT IS THEREFORE ORDERED that Grubb's motion for judgment on the pleadings (Doc. 7) is DENIED, the Commissioner's motion for judgment on the pleadings (Doc. 9) is GRANTED, and this action is DISMISSED WITH PREJUDICE.

/s/    Thomas D. Schroeder
                                       United States District Judge
May 21, 2014